IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PERCY D. GIVENS** | * | |
| Plaintiff | * | |
| v. | * | Civil No. **PJM 10-1249** |
| **CITIMORTGAGE, INC.** | * | |
| Defendant | * | |

## OPINION

Percy D. Givens, *pro se*, has sued CitiMortgage, Inc. ("Citi"), alleging four separate causes of action arising out of foreclosure proceedings against Givens's property in Bryans Road, Maryland. Citi has filed a Motion to Dismiss, to which Givens has responded. For the following reasons, the Court **GRANTS** Citi's Motion to Dismiss [Paper No. 4].

### I.

Although the Complaint makes few statements of fact that are not purely conclusory, Givens states that he refinanced his home in January 2008. He further alleges that he subsequently paid off the loan,[1] but says that he nevertheless began to receive notices from Citi that he was still indebted to it for the mortgage. In September 2009, Citi initiated foreclosure proceedings in the Circuit Court for Charles County, Maryland, despite Givens's claim that he had and has no privity of contract with Citi. From the state court's docket sheet, it can be determined that: the property was sold at auction (Givens filed exceptions to the sale), Givens

---

[1] Though not relevant to the disposition of Citi's Motion to Dismiss, it is worth noting that Citi has suggested that Givens attempted to pay off the loan with an international bill of exchange drafted against the United States Treasury, which is widely recognized as a fraudulent debt elimination scheme. *See, e.g.*, *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758-60 (W.D. Va. 2007).

unsuccessfully sought continuances and stays, and a final order of ratification of the sale was entered on March 30, 2010.[2]

Givens filed the present action on May 18, 2010, seeking damages, an injunction, cancellation of any liens on the property, and removal of any references to a mortgage with Citi from Givens's credit report. He alleges that Citi violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Hobbs Act, 18 U.S.C. § 1951, and the Maryland Consumer Protection Act ("MDCPA"), Md. Code Ann., Com. Law § 13-301 *et seq*. Givens asserts that Citi never provided him with a "VERIFIED" copy of a promissory note, that it wrongly reported negative credit information about Givens, and that it made "misrepresentations" in the foreclosure proceedings in order to wrongfully obtain Givens's property.

## II.

Except in specified cases, a complaint must satisfy the pleading standard of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a plaintiff's complaint, thus allowing for the dismissal of an inadequate complaint before costly litigation can proceed any further. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Thelen v. Mass. Mut.*, 111 F. Supp. 2d 688, 691 (D. Md. 2000). The Supreme Court recently clarified the standard applicable to Rule 12(b)(6), holding that merely conclusory allegations will

---

[2] In disposing of Citi's Motion to Dismiss, the Court does not base its decision on the details of the foreclosure proceedings, which are not set out in full in Givens's Complaint. The Court refers to them here merely to provide context, and to demonstrate that, even if Givens stated one or more claims upon which relief might be granted—which he has not done—he would almost certainly be precluded from proceeding any further, given that the factual

–2–

not allow a claim to move forward. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Iqbal* and *Twombly* make clear that the simplified pleading standard of Federal Rule of Civil Procedure 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Therefore, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In making its determination, the court must consider all well-pled allegations in a complaint as true and construe all factual allegations in a light most favorable to the plaintiff. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). However, the court is not obligated to accept as true conclusory factual allegations devoid of any reference to actual events. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nonetheless, a *pro se* complaint must at least meet a minimal threshold of plausibility.

### III.

The Court agrees with Citi that each of Givens's claims fails to state a claim upon which relief may be granted.

### A.

In his first claim, entitled "Violations of the Fair Debt Collection Practices Act, 15 USC 1692," Givens alleges that Citi failed to respond to his requests for Citi to "verify the debt [it] alleged was owed" and that Citi attempted to collect a debt owed without proof of a "contractual

---

underpinnings supporting this lawsuit either were fully litigated in or could have been litigated in state court.

right to collect a debt from Plaintiff." Givens thereby concludes that Citi violated the FDCPA by "acting as a debt collector, engaged in conduct of which the natural consequence was to harass, oppress, or abuse" him in attempts to collect the debt owed.

For an FDCPA claim against a "debt collector" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts that make it plausible to believe that the defendant is in fact a debt collector as defined by the FDCPA. *See* 15 U.S.C. § 1692a(6); *Sparrow v. SLM Corp.*, No. RWT 08-00012, 2009 WL 77462, at *2 (D. Md. Jan. 7, 2009). In the present case, to properly allege that Citi is a debt collector under the FDCPA, Givens would have to assert that Citi was attempting to collect "debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). Moreover, the FDCPA expressly exempts creditors and mortgagees from its definition of a debt collector. *See* 15 U.S.C. § 1692(a)(6); *Sparrow*, 2009 WL 77462, at *2. Here, by all appearances, Citi was at all relevant times acting as a creditor and mortgagee to collect a debt owed to itself, not to a third party; in other words, it does not fall under the FDCPA's definition of a debt collector.

Accordingly, Givens fails to state a claim upon which relief can be granted under the FDCPA.

**B.**

In his second claim, Givens alleges that Citi violated the FCRA by not responding to his request that it "verify the debt," while continuing to report negative credit information to credit reporting agencies ("CRAs"), despite the fact that Citi purportedly knew that Givens disputed the debt.

A furnisher of information to CRAs has two major responsibilities. First, § 1681s-2(a) of

the FCRA requires the furnisher to report only accurate information and to notify CRAs if information that is being furnished has been disputed by the consumer. *See* 15 U.S.C. § 1681s-2(a); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Second, § 1681s-2(b) requires the furnisher to investigate information it has provided to a CRA if the CRA notifies the furnisher that the consumer has contacted the CRA and disputed the furnished information. *See* 15 U.S.C. § 1681s-2(b); *Gorman*, 584 F.3d at 1154. The FCRA limits private causes of action only to violations of § 1681s-2(b); violations of § 1681s-2(a) are enforceable only by federal or state agencies. *See* 15 U.S.C. § 1681s-2(c); *Gorman*, 584 F.3d at 1154.

Here Givens alleges that Citi continued to report inaccurate negative information to CRAs after he contacted Citi directly and disputed the debt. Construing this allegation literally, it appears to be an assertion that Citi violated § 1681s-2(a) of the FCRA. But if that is so, it in no way aids Givens's suit. Such an allegation does not constitute a claim upon which relief can be granted because only the government may bring an action for a violation of § 1681s-2(a). Accordingly, Givens fails to state a claim upon which relief may be granted under § 1681s-2(a) of the FCRA.

In his Response to the Motion to Dismiss, Givens asserts that he also disputed the debt by directly contacting a CRA to claim that the information furnished by Citi was inaccurate.[3] Givens does not attempt to tie this fact to any statutory violation, but the short of the matter is

---

[3] When considering a motion to dismiss, the Court generally limits its review to the plaintiff's complaint. However, one prerequisite for the Court considering documents and facts outside the complaint is that they be explicitly relied on in the complaint. *See Phillips v. LCI Int'l., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Here, Givens did not even allude to disputing the debt with a CRA in his Complaint. Moreover, as noted above, even if the Court were to consider the additional allegations in Givens's Response, Givens would still fail to state a claim upon which relief may be granted.

that, assuming Givens did so act, it would trigger no liability on the part of Citi. Per § 1681s-2(b), Citi had no obligation to investigate the disputed debt until it was actually notified of the dispute by the CRA. Since Givens does not even allege that a CRA ever gave Citi any such notice, much less that Citi failed to conduct a proper investigation, Givens fails to state a claim under § 1681s-2(b) of the FCRA.

## C.

In his third claim, for "extortion" under the Hobbs Act, 18 U.S.C. § 1951, Givens alleges that Citi sought to obtain property or money it was not legally owed under color of official right. However, as Citi points out, 18 U.S.C. § 1951 is a criminal statute establishing no corresponding implicit or explicit right to a civil cause of action. 18 U.S.C. § 1951; *see Peterson v. Phila. Stock Exch.*, 717 F. Supp. 332, 335–36 (E.D. Pa. 1989). As Citi notes, Congress has almost invariably been explicit when it intended to create a civil cause of action corresponding to a criminal statute. *See, e.g.*, 18 U.S.C. § 1964. This Court will not undertake to fashion a civil remedy under 18 U.S.C. § 1951 absent a clear demonstration of Congressional intent to recognize such a cause of action. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Assoc.,* 453 U.S. 1, 13 (1981).

## D.

In his fourth claim, Givens alleges that Citi violated the MDCPA by engaging in unfair trade practices. He says that Citi made material misrepresentations to the clerk of the state court during foreclosure proceedings and that Citi's conduct constituted unfair trade practices under "Title 13, § 13-301 and § 13-303."

As Citi points out, however, Givens fails to allege that Citi committed any of the specific

acts or omissions enumerated as unfair trade practices under the statute.[4] Moreover, he is totally mute as to what specific acts by Citi purportedly constituted unfair trade practices; he merely asserts that Citi's "improper" conduct violated the statute, and that Citi made "misrepresentations" that were "material" to its success in foreclosure proceedings. Conclusory allegations such as these, which fail to explain specifically which of Citi's acts constituted one of the statute's enumerated violations, fall far short of the *Iqbal*/*Twombly* plausibility standard for pleadings.

Apart from the fact that Givens's conclusory allegations fail to allege a specific violation of the MDCPA, to the extent that he asserts claims or raises issues that either were brought, or could have been brought, in the state foreclosure proceedings—such as whether he ever had an enforceable mortgage agreement with Citi—he would almost certainly be precluded from asserting them again here. *See, e.g.*, *Culver v. Md. Ins. Comm'r*, 931 A.2d 537, 542 (Md. Ct. Spec. App. 2007) (noting that a party is barred "from re-litigating an issue that he or she has already litigated unsuccessfully in another action").

Since he has failed to allege specific acts constituting specific, enumerated violations of the MDCPA, Givens fails to state a claim upon which relief can be granted under that statute.

**IV.**

For the foregoing reasons, the Court **GRANTS** Citi's Motion to Dismiss [Paper 4].

A separate Order will **ISSUE**.

---

[4] These include: oral or written statements that mislead a consumer, falsely disparaging the goods or realty services sold by another, advertising goods to consumers without a reasonable expectation to meet public demand, or selling real property with a contract clause that limits the consumer's ability to seek consequential damages from breach of that contract. *See generally* Md. Code Ann., Com. Law § 13-301.

<pre>
                                        /s/
                              PETER J. MESSITTE
                         UNITED STATES DISTRICT JUDGE
</pre>

**February 28, 2011**